## THE FALCON.

### THE MADAGASCAR.

(District Court, E. D. Wisconsin. July 22, 1902.)

1. COLLISION—RUNNING STEAMERS ABREAST—SUCTION.

Where two steamers were proceeding down a river on a clear day in a broad channel from 200 to 400 feet apart, running abreast of each other, and the suction created thereby caused one of the steamers to sheer beyond control, and come into collision with a barge, and the evidence showed that the colliding steamer was the overtaking vessel, and as such was illegally running abreast of the other steamer, she was thereby wholly at fault, and liable for the damages sustained.

In Admiralty.

The libel is filed by the owners of the schooner barge Fryer for damages suffered by the barge in her passage up the river Ste. Marie, while in tow of the steamer Kalkaska, through collision by the steamer Falcon passing down, alleged to be caused by fault in the navigation of the Falcon abreast of the steamer Madagascar; but the latter is made a party as well, to respond for any liability which may appear against her, as asserted on behalf of the Falcon. A cross libel is filed by the owners of the Falcon against the Madagascar for damages received by the Falcon.

C. E. Kremer, for libelants.

Hoyt, Dustin & Kelley, for the Falcon.

Pence & Carpenter and H. D. Goulder, for the Madagascar.

SEAMAN, District Judge. The right of the libelants to recover for the injuries to the barge Fryer is indisputable. The collision occurred on a clear day, in a broad channel, without fault on the part of the Fryer or tow, and was due alone to fault in running the Fal-

116 F.—48

con and Madagascar abreast, and within the influence of the suction of one or the other, while passing the tow. These steamers were passing down the river upon well-defined courses, each loaded; the Falcon having left the locks at Sault Ste. Marie and taken her course on the Bayfield ranges, and the Madagascar having left Kemp's coal dock, on the south shore of the river, about 500 feet southward of the ranges, and by a diagonal course entered upon the range course; and under a probable speed of eight or nine miles an hour, with their screws substantially abreast, the Falcon on the port hand of the Madagascar, and not more than 40 feet away, when the Falcon sheered broadly over to port, beyond control, her stem striking the Fryer, then on a course upbound, variously estimated at 200 to 400 feet away, and inflicting the damage for which recovery is sought. It is conceded that this sheer was caused by suction, and the danger thus arising from running steamers abreast in proximity and at speed is well recognized by navigators, though all may not agree on theories of the precise causes, or whether it has effect on the starboard as well as the port side of a steamer having a right-handed screw, or depends upon relative size and speed of steamers so placed. In the face of this known danger, and in violation of a rule against such navigation, which was of special force in that great thoroughfare, the steamers were thus running for Little Rapids cut, and it is unquestionable that fault in the navigation of one or both brought about the condition which resulted in the collision. If the evidence establishes that the Falcon was the overtaking vessel within the meaning of rule 22 (28 Stat. 645, c. 64), the fault unmistakably rests with that steamer, and the Falcon alone must bear liability. The unobstructed view of the movements, with witnesses at hand on other vessels and on shore, free this inquiry of dependence for its solution on the testimony of masters and men, respectively, of the Falcon and Madagascar, and most of the circumstances leading up to the collision, if not all which are material, are thus authenticated. While the witnesses from the decks of the steamers in question are substantially united upon the one side and the other in conflicting versions of relative position and distances,—a conflict not infrequent in controversies of this kind,—tending to confuse the issue, and while it is further complicated by injudicious and ill-tempered answers on the part of the master of the Madagascar on cross-examination, I am of opinion that the priority of the Madagascar on a definite course down the river appears, not only by fair preponderance of the proof taken as a whole, but by circumstances which are practically beyond dispute. The water way down which both steamers were proceeding extends easterly from the locks to Little Rapids cut, and is bounded on the south by the American shore and a line of docks referred to in the testimony. The channel between the Bayfield buoy referred to and the American shore is clear and unobstructed, and on this occasion, as was usual in the season of navigation, processions of vessels were passing up and down, subject to the necessary regulations of speed, space, and order in line. The Falcon came out of the Weitzel lock "under check whistle," and when fairly entered on the Bayfield Range course, her engineer states that "the ordinary river

speed" was taken of "about nine miles an hour." Passing the steamer Saxon with two whalebacks in tow starboard to starboard, the master of the Falcon states that he then first observed the Madagascar moving down diagonally from the line of docks on the American shore, and that she was "about abreast" of the Falcon, and 400 or 500 feet off her starboard quarter; and the several witnesses on the Falcon concur in this view, and that their courses were thereafter converging. The Madagascar came out from Kemp's dock, on the south shore, steaming at half speed, and gradually gaining headway on a diagonal course for the range course, downward bound, so that the master of the tug General testifies that his tug passed between the Madagascar and the docks, near the lower end of Spry's dock (a distance below Kemp's), rounded her bow, and, passing her on the port side, came up on the port quarter of the stern whaleback of the Saxon's tow, on a signal by the latter for a tug; and after reaching this position he observed the Falcon coming down on the starboard, and substantially abreast, of this whaleback. This version places the Madagascar clearly ahead of the Falcon, and is confirmed by the witnesses on Kemp's dock in reference to their relative positions when cleared from that dock, even on the diagram submitted on behalf of the Falcon. The Madagascar was the larger and faster vessel, was 243 feet in length, while the Falcon was 194 feet; but the testimony is undisputed that there was no increase of her engine speed, and that her speed was moderate, and at no time exceeded eight miles an hour. It is not claimed that the Falcon was ahead at any moment beyond the fact of advantage in position on the range course, and when both steamers were observed on their courses down by the witnesses on the steamer Kalkaska and the tow barges Fryer and Oakleaf, these witnesses concur in the statement that the Madagascar was distinctly ahead, and was overtaken by the Falcon in so far as they came up abreast. That they ran with their screws practically abreast, the Falcon on the port side of the Madagascar for a period stated by each master at about four minutes, and with the Falcon's engine at "river speed," when, if she was the overtaking vessel, it was her imperative duty to drop astern, is the concurrent testimony on the part of both; and they concur in the proof that the Falcon was thus brought within the influence of suction, and, attempting to recover control, took the violent sheer which resulted in the collision with the Fryer. On the view stated, the Madagascar was running on her course, within her rights, and at a proper speed in reference to keeping the regulation distance from the steamer and tow (schooner H. A. Barr) which had the advance of the line. The Falcon was the overtaking steamer from the time the Madagascar was noticeably in the lead, bound down, and maintaining such lead; and the venture on the part of the Falcon to obtain the advance violated the rule then applicable, and brought about the disaster. Statements by master and men of the Falcon that they were "about abreast" when the Madagascar was first observed, or, as subsequently qualified, when it became apparent that the latter was downward bound, aside from want of exactness, are not only overborne by the direct testimony above referred to, but

are irreconcilable with the conceded fact that the Falcon was not actually ahead at any time, though having advantage both in course and headway. However close the margin of priority was, the testimony establishes it in favor of the Madagascar, and the conclusion is inevitable that the Falcon was attempting to pass on the theory that precedence on an exact range course gave such right, irrespective of the actual advance on a recognized course for entering Little Rapids cut,—a theory which cannot receive sanction under the conditions shown,—and this without signal to indicate such understanding or purpose; and that the Falcon was at fault for so running, and must be condemned accordingly. Finding direct violation of rule 22, rules 20, 21, 27, and 28, cited in the argument, are not applicable, no infringement appearing on the part of the Madagascar; and if pilot rule 4, also cited, were applicable to the conditions when the latter moved out from Kemp's dock, the failure to give the signal there indicated has no bearing on the present controversy, for the reason that her downward course was manifest throughout the movement, and was so observed in ample time from the Falcon.

Decree accordingly in favor of the libelants and against the steamer Falcon, with costs, and a reference ordered to ascertain the damages. The steamer Madagascar is discharged from the libel and the cross-libel by the owners of the Falcon against the Madagascar is dismissed, with costs.